UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONICA NICOLAYSEN DOWHAN, ERIK
ELIASON ANDREW KRESS, MATTHEWS V.
JOHN, REMO MORRONE, SUSAN QUICK,
SUZANNE TWOMLEY, and CHING PEI,
individually and on behalf of similarly situated
LL5/LL6 employees,

  Plaintiffs,          Civil Action No. 19-CV-11923

vs.               HON. BERNARD A. FRIEDMAN

FORD MOTOR COMPANY,

  Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION
## TO DENY CLASS AND COLLECTIVE CERTIFICATION

  This matter is presently before the Court on the motion of defendant Ford Motor Company ("Ford") to deny class and collective certification [docket entry 27]. Plaintiffs have responded and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

  Plaintiffs are former salaried employees of defendant Ford. In their amended complaint, plaintiffs allege that in early 2019, Ford selected them, along with approximately 800 other managers, for involuntary termination pursuant to the "fourth wave" of Ford's Salaried Involuntary Reduction Process ("SIRP"). Am. Compl. ¶ 74. Plaintiffs allege that under Ford's General Retirement Plan, managers who are age fifty-five with ten years of service with Ford ("Age Milestone") and managers of any age with thirty years of service with Ford ("Service Milestone")

are eligible for elevated pension benefits. *Id*. ¶ 7. Ford's retirement benefits framework also allegedly allows qualified managers to "Bridge to full retirement benefits" by adding three years of age or service credits to managers age fifty-two or older and/or those with ten or more years of service so they can meet one of these milestones ("3+3 Bridge"). *Id*. ¶¶ 13-14. All eight plaintiffs were managers at Ford within three years of the Age and/or Service Milestone when they were terminated on May 31, 2019.

Plaintiffs allege that Ford deliberately targeted them as "higher pension-cost salaried employees based on legally protected characteristics including the employee's proximity to retirement benefit milestones and the employee's age." *Id*. ¶ 72. Plaintiffs further allege that Ford wrongfully denied or concealed their "3+3 Bridging" rights, which would have allowed them access to early retirement and supplemental pension benefits. *Id*. ¶ 13. Finally, plaintiffs allege that some similarly situated employees were arbitrarily granted the opportunity to Bridge, while others were not. *Id*. ¶¶ 15, 108. By terminating them under these circumstances, Ford allegedly violated plaintiffs' rights under the Employee Retirement Income Security Act ("ERISA") § 510, the Elliott-Larsen Civil Rights Act, and the Age Discrimination and Employment Act ("ADEA"). *Id*. ¶¶ 206-207, 221-222, 243, 247.

Plaintiffs indicate that they intend to represent "all former Ford LL5/LL6 managers hired before January 1, 2004[1] who were terminated between the ages of 52 and 55 who had 10 years

---

[1] Access to Bridging benefits is not available to LL5/LL6 managers hired after this date. Am. Compl. ¶ 66.

of seniority and/or were less than three years short of 30 years of Ford Service and whose Bridging request was denied regardless of the Class Members [sic] retirement status." *Id*. ¶¶ 191-193. Plaintiffs also propose an ADEA collective action consisting of "all salaried, grade level LL5 and LL6 employees, ages 50 and older, that were selected for separation under the Fourth Wave of the 2019 SIRP. . . ." *Id*. ¶ 247. Plaintiffs do not purport to represent any former Ford managers who have "executed a release of claims."[2] *Id*. ¶ 24.

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 345 (2011). The rule requires plaintiffs to show that

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Class certification "is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 350-52 (internal quotation marks omitted). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Trial courts have

---

[2] A separate suit addressing the complaints of LL5/LL6 Ford managers who did sign a release in connection with the 2019 SIRP was previously pending before this Court. *See Woellecke v. Ford Motor Co.*, No. 2:19-cv-12430 (E.D. Mich.). That matter is being arbitrated.

"broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011).

At issue here is the first of the four class action prerequisites, also known as the "numerosity" requirement. *Dukes*, 564 U.S. at 349. This Court has previously noted that

> [n]umerosity is a fact specific inquiry . . . but there is no strict numerical test to determine when the class is large enough or too small to be joined under the Federal Rules of Civil Procedure. "[I]t is generally accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement."

*Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020) (quoting *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014). This Court has also recognized the "modern trend" of requiring "a minimum between 21 and 40 class members." *Davidson*, 302 F.R.D. at 436 (internal quotation marks omitted).

Collective action certification under the ADEA is governed by 29 U.S.C. § 621(b) of the Fair Labor Standards Act of 1938 ("FLSA"). *See Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-cv-14596, 2012 WL 424878, at *3-4 (E.D. Mich. Feb. 9, 2012). The core prerequisite for certification as an ADEA collective action is that employees must be "similarly situated." 29 U.S.C. § 621(b). "There is no definitive test in the Sixth Circuit to determine whether plaintiffs are 'similarly situated' to each other, but Civil Rule 23's more stringent standards for certifying a class

action do not apply." *Biggs v. Quicken Loans, Inc.*, No. 10-cv-11928, 2014 WL 12661985, at *2 (E.D. Mich. Feb. 19, 2014). Nonetheless, "the purpose of collective actions under the FLSA is judicial efficiency." *Najor v. G. Reynolds Sims*, No. 10-cv-14307, 2011 WL 3422259, at *3 (E.D. Mich. Aug. 1, 2011). Further, in determining collective action certification, courts "often consider factors such as whether potential plaintiffs were identified, and whether affidavits of potential plaintiffs were submitted." *Demorris v. Rite Way Fence, Inc.,* No. 14-cv-13777, 2015 WL 12990483, at *3 (E.D. Mich. Mar. 30, 2015). Absent evidence of similarly situated employees for the lead plaintiffs to represent, judicial efficiency would not be served by certifying a suit as a collective action. *See Najor*, 2011 WL 3422259, at *3. Though the certification bar is lower than that which exists for class action certification, plaintiffs must at least present a "modest factual showing" that similarly situated individuals exist. *Benion v. Lecom, Inc.*, No. 15-cv-14367, 2016 WL 2801562, at *10 (E.D. Mich. May 13, 2016).

Defendant argues that the Court should deny class or collective certification because "the largest *possible* class or collective action as defined by Plaintiffs would number merely eleven people." Def.'s Mot. at 1 (emphasis in original). Ford asserts that "only *twelve* LL5 and LL6 employees nationwide during any wave of Smart Redesign chose not to sign waivers (or signed and then revoked their waiver) . . . [and] [s]ince then, one of those twelve has released their claims. . . ." *Id*. at 4 (emphasis in original). Defendant adds that "[t]he proposed ADEA collective action is even smaller with ten potential members; one of the eleven employees–named Plaintiff Ching Pei–is under 50, and thus outside of the collective action definition." *Id*. at 4-5. Finally, defendant argues

5

that joinder would not be impracticable because eight of the eleven possible plaintiffs are named in the present suit, while the three other individuals have filed substantially similar suits of their own. *Id*. at 4 n.2. Defendant claims that plaintiffs' failure to identify any other similarly situated employees strongly weighs against collective action certification as well. *Id*. at 10.

Plaintiffs have failed to provide any information as to the number of potential class members. Plaintiffs assert that "[t]he number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress for injuries sustained and to obtain class wide equitable injunctive relief." Am. Compl. ¶ 195. Such conclusory statements, merely reiterating a Rule 23 requirement, cannot alone establish numerosity. *See Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 781 (E.D. Mich. 1971). As the Sixth Circuit has stated:

> We do not mean to suggest that the determination of whether a complaint gives rise to a class action can be made merely on the basis of numbers. It is clear, however, that an action is not maintainable as a class action merely because it is designated as such in the pleadings. The plaintiff has the positive burden of showing that the circumstances surrounding the case justify a determination by the district court, on a motion to dismiss or otherwise, that the number is so large that it would be impracticable to join all the parties.

*Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970) (citations omitted).

In response to the present motion, plaintiffs primarily rely on an assertion that "discovery is still in its early stages," despite having had the past seven months to establish this crucial component of their case. Pls.' Resp. at 4. Further, prior to ruling on the instant motion, this Court granted plaintiffs additional time to depose Ford's representative in order to test the veracity

of the representative's assertions regarding the size of the proposed class or collective action. *See* docket entry 41. Plaintiffs were ordered to inform the Court, "no later than December 18, 2020, as to whether they have discovered any additional evidence regarding the size of the proposed class or collective action." *Id*. at 2. Plaintiffs have failed to inform the Court whether they have discovered any such evidence. In order to proceed as a class or collective action, plaintiffs must present actual – not speculative or presumed – evidence as to the number of similarly situated persons. Finally, plaintiffs concede that "if the class of putative plaintiffs is limited to only eleven individuals, the case should not proceed as a class or collective action." Pls.' Resp. at 5.

It is plaintiffs' burden to show that a sufficient number of class members exist to permit this matter to proceed as either a class or collective action. Despite having had ample opportunity to conduct discovery, plaintiffs have not shown that more than eleven class members exist, a clearly insufficient number, particularly in light of the fact that all eleven potential members are already named plaintiffs in ongoing litigation against Ford. Accordingly,

IT IS ORDERED that defendant's motion to deny class and collective certification is granted.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated:  December 29, 2020  SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan